

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-16-2002

# USA v. Stinson

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-3891

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"USA v. Stinson" (2002). *2002 Decisions*. Paper 514.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/514

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————————

No. 01-3891

————————————

UNITED STATES OF AMERICA,
Appellee,

v.

DAVID R. STINSON and JOYCE R. STINSON,
Appellants.

————————————

Appeal from the United States District Court
for the Western District of Pennsylvania
(C.A. No. 00-491)
District Judge: Honorable Robert J. Cindrich

————————————

Argued
June 27, 2002

Before AMBRO and STAPLETON, <u>Circuit Judges</u>, and O'NEILL, <u>District Judge</u>.[*]
(Filed: August 16, 2002)

————————————

Mark J. Krauland, Esq. (Argued)
Mark J. Krauland & Assoc., P.C.
912 Western Ave.
Pittsburgh, PA 15233
Counsel for Appellants

Sara A. Ketchum, Esq. (Argued)
Tax Division
Department of Justice

————————

[*] Honorable Thomas N. O'Neill, Jr., U.S. District Judge for the Eastern District of
Pennsylvania, sitting by designation.

P.O. Box 502
Washington, D.C. 20044
Counsel for Appellee

_____

OPINION OF THE COURT
_____

O'NEILL, J.:

Appellants David and Joyce Stinson appeal the District Court's entry of summary judgment in favor of the United States in the amount of $152,239.34, reflecting income taxes, penalties and interest assessed by the Internal Revenue Service against appellants for the years 1985, 1986, 1987, 1988, and 1991.

I.

The IRS had assessed liabilities against appellants on March 12, 1990 (for the tax year 1988), March 19, 1990 (for the tax years 1985, 1986, and 1987) and May 25, 1992 (for the tax year 1991). These taxes were not paid upon notice and demand, thus giving rise to federal tax liens. On April 6, 1998, appellants entered into a payroll deduction agreement ("PDA") with the IRS to pay their tax liability in monthly installments. Under the terms of this agreement $1,132 was to be deducted each month from the wages of Joyce Stinson. This agreement was signed by Harold and Joyce Stinson and a representative of Mrs. Stinson's employer. In the space marked "IRS Originator, title and IDRS number" the words "Harold Stanton Revenue Officer 2122" are printed. Payments were deducted and forwarded to the IRS each month from May, 1998 through October, 2000. On March 13, 2000 the United States filed this action seeking to reduce to judgment the balance remaining on the assessments

made against appellants. As of December 31, 2000 the total amount of these assessments left unpaid was $152,239.34.

The IRS moved for summary judgment and on July 17, 2001, Magistrate Judge Kenneth Benson filed a Report and Recommendation in favor of the government. Judge Benson rejected appellants' contention that the PDA should act as a bar to the government's suit because it constituted an installment agreement under 26 U.S.C. § 6159.[1] According to Judge Benson, since no signature appeared in the box on the PDA marked "Agreement examined or approved by (*Signature, title, and function*)" it was never reviewed or approved by any official authorized to bind the IRS, and therefore there was no evidence that the PDA was in effect at the time this action was filed. Accordingly, Judge Benson held that the IRS was not barred by 26 U.S.C. § 6331(k)(2) from maintaining this suit.[2] Appellants objected to this recommendation on the grounds that (1) proper authority was delegated to Stanton in compliance with IRS regulations, (2) if Stanton had no such authority then there is a triable issue as to whether appellants knew or could have known this and whether he represented himself to the Stinson's as having such authority, and (3) the principles of equitable estoppel should operate to bar

---

[1] This section describes the circumstances under which a taxpayer "is allowed to satisfy liability for payment of any tax in installment payments . . . ." 26 U.S.C. § 6159(a).

[2] Section 6331(k)(2) states that "no levy pursuant to § 6331(a) shall be made on the property or rights to property of any person with respect to any unpaid tax (A) during the period that an offer by such person for an installment agreement under § 6159 for payment of such unpaid tax is pending with the Secretary;" and "(C) during the period such an installment agreement for payment of such unpaid tax is in effect."

Section 6331(a) states: "If any person liable to pay any tax neglects or refuses to pay the same within 10 days of notice and demand it shall be lawful for the Secretary to collect such tax . . . by levy upon all property and rights to property . . . belonging to such person or on which there is a lien provided in this chapter for the payment of such tax."

the government from bringing this action.

On September 18, 2001, District Court Judge Robert Cindrich granted the government's motion for summary judgement; however, he did not adopt the reasoning of the Magistrate Judge, finding instead that the PDA appeared "to fit within the language of Section 6159." Judge Cindrich held further that even if the PDA constituted a valid installment agreement, appellants' argument must fail because § 6331(k)(2) was not in effect when the PDA began to operate in May, 1998 and therefore could not be relied on by appellants to bar the current action. Since at the time the PDA was signed installment agreements were not yet covered by § 6331(k), Judge Cindrich held there could have been no detrimental reliance on any alleged misrepresentation by the government that the PDA was such an agreement; therefore, appellants' estoppel argument also failed.

On appeal the Stinsons continue to assert that the PDA constitutes an installment agreement under § 6159(a). Appellants contend that it was not they but Magistrate Judge Benson who first attempted to apply § 6331(k), and argue that the existence of a valid § 6159 agreement bars the type of action brought against them by the government irrespective of the applicability of § 6331(k). Should we find that the PDA is not a valid installment agreement under § 6159, appellants argue that the doctrine of equitable estoppel should bar the action against them.

II.

On appeal from an order entering summary judgment, this Court undertakes de novo review, applying the same standard the District Court should apply. Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c).

Appellants contend that the District Court's ruling that § 6331(k)(2) does not bar the government's suit is not relevant to their appeal. We agree. Section 6331(k)(2) bars the Secretary of the Treasury from levying upon the property or rights to property of any person with respect to any unpaid tax during the period that an offer for an installment agreement under § 6159 is pending and during the period such an installment agreement is in effect. Appellants do not contend that the IRS imposed an unlawful levy on their property. Rather, appellants argue that since § 6159 states that the Secretary is authorized to enter into agreements under which the "taxpayer is allowed to satisfy liability for payment of any tax in installment payments. . . ", their compliance with the PDA satisfied their outstanding tax liability.

The IRS "limits the length of installment agreements to the 10-year statutory collection period [3] except in instances when a reasonable extension of the statutory period for collection will allow an agreement to be accepted. In these cases, waivers of the CSED [(Collection Statute Expiration Date)] should be secured." Int. Rev. Man. 5.14.2.1(2). Appellants point out that "[i]n an area of the [PDA] listed as 'IRS Use Only', there is a circle around an indicator for the statement 'No future action is required,' and an entry listing the CSED as 3/19/00." (App. Br. at 11). According to appellants, since the PDA does not include a condition extending the period of limitations and appellants have never waived the statutory expiration date, the agreement by its terms expired on March 19, 2000. We note that the PDA does not list the CSED as "3/19/00" but lists the *earliest* CSED as "3/19/00" (emphasis

---

[3] Under 26 U.S.C. § 6501(a) the government may bring suit against a taxpayer "only if the . . . proceeding [is] begun within ten years after the assessment of the tax."

-5-

added), and that payments continued to be deducted and forwarded to the government through October, 2000. There is nothing on the face of the PDA that suggests that it was the intention of either party that the PDA have a definite termination date of March 19, 2000. But there is also nothing contained in the PDA indicating that the IRS was willing to take less than the full amount owed by appellants.

At oral argument counsel for appellants admitted that as the ten year statute of limitations approached on the earliest assessment, March 12, 1990, the IRS asked appellants to agree to a voluntary extension of the statute of limitations that would allow the terms of the PDA to remain in place. Appellants refused. This left the IRS with the choice of either allowing appellants to avoid their outstanding tax liability or bringing suit prior to March 13, 2000.[4] 28 U.S.C. §§ 7403(a) states in relevant part:

> In any case where there has been a refusal or neglect to pay any tax, or to discharge any liability in respect thereof, whether or not levy has been made, the Attorney General or his delegate, at the request of the Secretary, may direct a civil action to be filed in a district court of the United States to enforce the lien of the United States under this title with respect to such tax or liability . . . .

Appellants' refusal to extend the statutory period is the functional equivalent of a refusal to pay their tax obligation, thereby rendering an action to reduce this obligation to judgment appropriate. This is true whether the PDA is construed to be a § 6159 installment agreement or not.[5] Treasury Regulation §

---

[4] March 12, 2000, fell on a Sunday. The government filed this suit on March 13, 2000, the first day following that was not a Saturday, Sunday or legal holiday. See Fed. R. Civ. P. 6(a).

[5] Even if the PDA does constitute a § 6159 installment agreement, appellants have not been able to identify any reason why such a circumstance would bar the government from bringing an action to reduce their outstanding tax liability to judgment. See 26 U.S.C. §§ 7401-03 (authorizing the IRS to reduce an unpaid tax assessment to judgment and to foreclose federal tax liens which arise from such an

-6-

301.6159-1(d) states:

> Except as otherwise provided by the installment agreement, during the terms of the agreement the director may take actions to protect the interests of the government with regard to the unpaid balance of the tax liability to which the installment agreement applies . . . , including any actions enumerated in the agreement.

26 C.F.R. § 301.6159-1. Appellants argue that the government's suit against them is not authorized by this regulation because it does not fit among any of the examples of permissible action that are listed immediately following the regulation.[6] We disagree. The four scenarios listed are merely examples of such action and do not provide an exhaustive list of the only actions that may ever be taken by the IRS to protect the interests of the government. If during the pendency of an installment agreement the limitations period on the assessed liability of the taxpayer is about to expire, the government may protect the interests of the United States by reducing the taxpayer's obligation to judgment.

Since in our view the government properly brought this action against appellants whether the PDA constitutes a valid installment agreement under § 6159 or not, there could have been no detrimental reliance on any alleged misrepresentation by the government that the PDA was an

_____

assessment in federal court).

[6] The regulation states: "The actions include, for example:

1.  Requesting updated financial information from any party to the agreement;
2.  Conducting further investigations (including the issuance and enforcement of summonses) in connection with the tax liability to which the installment agreement applies.
3.  Filing or refiling notices of federal tax lien; and
4.  Taking collection action against any person who is not a party to the agreement but who is liable for the tax to which the agreement applies."

26 C.F.R. § 301.6159.1(d)(1-4).

installment agreement. Therefore we need not address appellants' argument the government should be equitably estopped from bringing suit against them.

III.

For the foregoing reasons, we will affirm the Order of the District Court granting the government's motion for summary judgment.

_____

TO THE CLERK:

Please file the foregoing opinion.

  /s/ Thomas N. O'Neill, Jr.
District Judge
